UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | | |
|---|---|---|
| DAVID W. BAILEY, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 11-25-ART |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| REVEREND BOBBY ISAAC, | ) | **AND ORDER** |
| Chaplain, Otter Creek Correctional | ) | |
| Complex, et al., | ) | |
| | ) | |
| Defendants. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Plaintiff David W. Bailey believes that the defendants violated his statutory and constitutional rights when they denied him a sweat lodge during his incarceration at the Otter Creek Correctional Complex in Wheelwright, Kentucky. Bailey's only remaining cause of action is a 42 U.S.C. § 1983 claim for monetary relief. R. 54. The defendants have moved for summary judgment. R. 56; R. 57. Because no genuine issue of material fact is left for trial, the defendants' motions are granted.

### BACKGROUND

Bailey, a member of the Cherokee tribe, is currently an inmate of the Green River Correctional Complex in Central City, Kentucky. Between June 2010 and May 2012, Bailey was an inmate of the Otter Creek Correctional Complex. R. 46 at 1. Otter Creek was a state prison operated by Defendant Corrections Corporation of America. While at Otter Creek, Bailey was able to participate in several Native American religious ceremonies, including burning incense and smoking a smudge pipe. Bailey Dep., R. 47 at 35–37. Prison officials

also allowed Native American inmates to hold weekly services and monthly smoke circles, to carry medicine bags with herbs, and to participate in a seasonal festival. Isaac Memo. & Reports, R. 46-4.

One Native American ceremony, however, remained out of Bailey's reach. In September 2010, Bailey asked Otter Creek's chaplain, the Reverend Bobby Isaac, for a sweat lodge. Compl., R. 2 at 2. According to Bailey, a sweat lodge is a dome-shaped structure made of tree branches. Bailey Dep., R. 47 at 18. Those branches are wrapped in blankets or animal hides to create an enclosed space. *Id*. Inside the sweat lodge, Bailey hoped to heat stones on a fire and pour water on them to produce steam. That steam would cause him to sweat and allow him to engage in a purification ritual. *Id.* at 67.

After only a "miniscule period of time," Reverend Isaac denied Bailey's request. R. 2 at 3. Over the next two months, Bailey appealed Isaac's decision to Otter Creek's grievance committee, the prison's warden, and the Commissioner of the Kentucky Department of Corrections. Each official either denied his request or did not act on it. *Id*. at 3-5. As a result, Bailey filed this lawsuit in February 2011, seeking injunctive relief, unspecified compensatory damages, and punitive damages. *Id.* at 8. In May 2012, the Kentucky Department of Corrections moved Bailey from Otter Creek to the Green River Correctional Complex. *See* R. 48.

The Court has already dismissed most of Bailey's claims. R. 11; R. 54. Only his claim for monetary relief under 42 U.S.C. § 1983 remains. The defendants have now moved for summary judgment. R. 56; R. 57. While these motions were pending, Bailey filed a motion

to appoint counsel, R. 58, two motions to amend his complaint, R. 59 and R. 63, and a motion to set a trial date. R. 64.

## DISCUSSION

Defendants Correctional Corporation of America, David Frye, Bobby Isaac, Grady Perry, and Randy Stovall argue that there are no genuine issues of material fact supporting Bailey's § 1983 claim. R. 57. Defendant LaDonna Thompson argues that the doctrine of qualified immunity bars Bailey's claim against her. R. 56. Defendants are correct, and their motions for summary judgment must be granted. Bailey's assorted motions do not affect that conclusion, so they must be denied.

## I. Constitutional Right to a Sweat Lodge

The federal courts know best when they know of what they speak. When evaluating an inmate's accusation that prison officials have violated his constitutional rights, the Court is mindful of the fact that prison administration is an "inordinately difficult undertaking" that falls "peculiarly within the province of the legislative and executive branches of government." *Turner v. Safley*, 482 U.S. 78, 85 (1987); *Bell v. Wolfish*, 441 U.S. 520, 562 (1979) ("[U]nder the Constitution, the first question to be answered is not whose plan is best, but in what branch of the Government is lodged the authority to initially devise the plan."). Court must accordingly defer to the considered choices of prison officials, an approach made doubly advisable where, as here, the prison in question is a state facility. *Turner*, 482 U.S. at 84–85. But inmates do not check their rights at their cell doors. *Id.* at 84 ("Prison walls do not form a barrier separating prison inmates from the protections of the Constitution."). The Court balances these concerns by evaluating prison regulations that threaten inmates'

constitutional rights for their reasonable relation to legitimate penological goals. *Id.* at 89; *see also Bell*, 441 U.S. at 546 ("A detainee simply does not possess the full range of freedoms of an unincarcerated individual."). Four factors guide the Court's evaluation.

First, prison officials must present a legitimate and logical connection between the regulation and the stated goal. If officials meet this initial burden, the Court balances the remaining factors: whether the inmate can exercise the right through alternative means, the impact of accommodation on prison operations, and the existence of ready alternatives to accommodate the right at minimal cost to valid penological interests. *See Colvin v. Caruso*, 605 F.3d 282, 293 (6th Cir. 2010) (citing *Turner*, 482 U.S. at 89-91). The Court addresses each factor in turn.

***Connection to a Legitimate Goal:*** The defendants have offered a number of legitimate reasons for their denial of Bailey's request for a sweat lodge. R. 54. The sweat lodge ceremony involves burning embers and hot coals, heavy blocks of wood and rocks, and sharp tools like shovels. R. 46 at 17-18. All of these objects might be used as weapons by prisoners. The sweat lodge ceremony would also take place in an enclosed area out of prison guards' view, creating another security risk. *Id.*

In response, Bailey argues that these interests are not legitimate because prison officials allowed inmates to use hot coals and sharp tools on other occasions. R. 60 at 1. But Bailey gives no indication that any of these dangerous implements were used out of sight and supervision of prison staff—a concern of "paramount" importance to Otter Creek's officials. R. 62 at 2. Bailey further contends that the sweat lodge does not have to be enclosed. But this claim is contrary to everything Bailey has stated up until this point and every similar request

the Court can find. *See* Compl., R. 2-1 at 8 (original request of a "low-built structure of logs covered in earth"); Bailey Dep., R. 47 at 18, 56 (describing an enclosed structure covered in hides or blankets); *see, e.g.*, *Fowler v. Crawford*, 534 F.3d 931, 939 (8th Cir. 2008) (describing "an enclosed area inaccessible to outside view"); *McElhaney v. Elo*, 2000 WL 32036, at *1 n.1 (6th Cir. 2000) (stating that a sweat lodge is a dark, enclosed, structure); *Allen v. Toombs*, 827 F.2d 563, 569 (9th Cir. 1987) ("The Sacred Sweat Lodge ritual takes place in a small hut-like structure built from willows and blankets."); *Youngbear v. Thalacker*, 174 F. Supp. 2d 902, 908 (N.D. Iowa 2001) ("The sweat lodge structure was traditionally covered by animal hides but is now often covered by canvas."); *Newberg v. Geo Group, Inc.*, 2:09-CV-625-FTM-36, 2011 WL 2533804, at *10 n.12 (M.D. Fla. June 27, 2011) ("Willow poles form the structure of a sweat lodge. . . . Blankets or tarps cover the entire structure to contain heat and dark."); *Hunter v. Sanders*, No. 2:06 CV 130 JMM/BD, 2007 WL 625900, at *1 n.1 (E.D. Ark. Feb. 26, 2007) ("Sweat lodges are oval, dome-shaped structures framed with willow saplings and commonly covered in canvas, with a pit dug inside for holding heated rocks."); *Wrenc v. Johnson*, No. CIV.A. V-04-076, 2006 WL 2092438, at *3 (S.D. Tex. July 26, 2006) ("[A] sweat lodge is an enclosed structure.").

Bailey's last-ditch effort to dispute a basic factual premise of this case is insufficient to create a genuine issue of fact. *See Bruederle v. Louisville Metro Gov't*, 687 F.3d 771, 779 (6th Cir. 2012) (holding that there is no genuine dispute where the plaintiff's statements in his summary judgment motion were contradicted by all the evidence in the case).

***Exercise Through Alternative Means:*** There is undisputed evidence that Bailey was able to participate in several Native American rituals, including burning incense, smoking a

5

smudge pipe, and carrying medicine bags. *See* Bailey Dep., R. 47 at 35–37; Isaac Memo. & Reports, R. 46-4 at 12–14.  Prison officials also allowed Native American inmates to hold weekly services and monthly smoke circles and to participate in a seasonal festival. *See* Isaac Memo. & Reports, R. 46-4 at 11–14. While these activities might not serve the same "purification" purpose as a sweat lodge, Bailey was not deprived of all means of practicing his religion. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 351-52 (1987) (holding that the appropriate inquiry is not access to a particular ritual, but whether inmates were denied of all forms of religious expression).

*Impact of Accommodation:* Neither party has addressed this prong in their briefing. The Court declines to guess in whose favor it might weigh.

*Ease of Accommodation:* Bailey now suggests that his request could be easily accommodated through the use of an outside observer who would supervise the inmates during use of the sweat lodge. R. 60 at 2. His assertion does not "meet *Turner*'s high standard." *Overton v. Bazzetta*, 539 U.S. 126, 136 (2003). It is not clear that this alternative is of "de minimis cost" to Otter Creek's penological interests, and it is Bailey's responsibility to make this showing.  R. 62 at 3; *see also Thornburgh v. Abbott*, 490 U.S. 401, 419 (1989) (noting further that "the administrative inconvenience of [the] proposed alternative" should be considered). Bailey also suggests in an unrelated motion that the prison could have accommodated his request by using a tent with windows. R. 58 at 1. Since this suggestion is phrased as a question, the Court is not certain whether Bailey intended to raise it as an alternative means of accommodation. But in any case a prison need not consider and reject every possible accommodation of a prisoner's request. *Estate of Shabazz*, 482 U.S. at 350

(quoting *Turner*, 482 U.S. at 90-91). Bailey has failed to demonstrate that Otter Creek's regulation was an "exaggerated response" to its stated concerns. *See Turner*, 482 U.S. at 90–91.

The balance of the four factors weighs against Bailey's constitutional claim. Thus, there is no genuine dispute that Otter Creek's denial of Bailey's request was reasonably related to its legitimate penological interests. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Defendants Correctional Corporation of America, David Frye, Bobby Isaac, Grady Perry, and Randy Stovall are entitled to summary judgment.

## II.  Qualified Immunity

Thompson is correct the doctrine of qualified immunity bars Bailey's claims against her. Qualified immunity shields government officials from liability unless their conduct violated a clearly established constitutional right. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). The parties agree that Thompson's involvement in this matter was limited to her denial of Bailey's administrative appeal. R. 30; R. 56; R. 59. Since Otter Creek's original denial of Bailey's request did not violate his constitutional rights, *see* Part I, *supra*, Thompson's denial of his appeal could not have done so. Bailey's claim against Thompson fails.

## III.  Motions to Amend

During the pendency of defendants' motions for summary judgment, Bailey filed two motions to amend his complaint. R. 59; R. 63. Bailey's first motion clarifies his claims, but does not add additional facts or analysis sufficient to survive the defendants' motions for summary judgment. R. 59. In his second motion to amend, Bailey claims that Otter Creek's

actions violated his Fourteenth Amendment right to freedom from religious discrimination. R. 63. This motion must be denied as futile because the amended complaint would not survive a motion to dismiss. *See Brown v. Cassens Transp. Co.*, 675 F.3d 946, 968 (6th Cir. 2012). Bailey has presented no facts upon which relief could be granted. There is no indication that Otter Creek denied Bailey's request for a sweat lodge with the intent to discriminate against his religion. *See Fisher v. McGinnis*, 238 F.3d 420, at *2 (6th Cir. 2000) (unpublished) (citing *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265–66 (1977)); *Poe v. Haydon*, 853 F.2d 418, 430 (6th Cir. 1988) ("[A]n essential element of any equal protection claim is purposeful discrimination."); *see also* Part I, *supra*. The only suggestion of discriminatory intent in any of Bailey's pleadings is his statement that Reverend Isaac "had been speaking against Gentiles and their pagan Practices in his non-secular Cause for Deprivation out of Custom for Bigotry and devout Christian Faith." R. 60 at 1. This statement is not a sufficiently clear hook on which to hang a Fourteenth Amendment claim. Bailey's amended complaint would not survive a motion to dismiss, so his motion to amend must be denied.

## IV. Other Motions

Bailey has also filed motions to appoint counsel and to set a trial date. R. 58; R. 64. Because none of Bailey's underlying claims survive, these motions must be denied as moot.

### CONCLUSION

It is therefore **ORDERED** that:

1. Thompson's motion for summary judgment, R. 56, is **GRANTED**.

2. The Correctional Corporation of America, David Frye, Bobby Isaac, Grady Perry, and Randy Stovall's motion for summary judgment, R. 57, is **GRANTED**.

3. Bailey's motion to appoint counsel, R. 58, is **DENIED AS MOOT**.

4. Bailey's motion to amend his complaint, R. 59, is **DENIED**.

5. Bailey's motion to amend his complaint, R. 63, is **DENIED**.

6. Bailey's motion to set a trial date, R. 64, is **DENIED AS MOOT**.

7. Thompson's motion for an extension of time, R. 66, is **DENIED AS MOOT.**

8. The Court will enter a separate Judgment.

This the 24th day of September, 2012.

Signed By:
*Amul R. Thapar* AT
United States District Judge